IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| TODD DEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-3162-WEB |
| | ) | |
| SAM CLINE[1], | ) | |
| Warden, Ellsworth Correctional Facility, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| STEPHEN SIX, Attorney General, | ) | |
| State of Kansas, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER

Petitioner Todd Deal filed this 28 U.S.C. § 2254 petition for writ of habeas corpus (Doc.

1), requesting the court vacate his sentence and issue an order that he receive a new trial.

I. Facts

In a federal habeas proceeding, a determination of the facts made by the State court is

presumed to be correct. 28 U.S.C. § 2254(e)(1). The Kansas Supreme Court found the

following facts:

The victim, Aubrey Phalp, was spending the night at her father's house on August 2,

1998. Her parents were divorced. Her father did not wake her in the morning, and when he

attempted to wake her later in the day, he discovered the bedroom door was locked. Upon

opening the door, he discovered Phalp was not in her room, and a bedroom window was open. A

---

[1]The petitioner initially named Johnnie Goddard, however, since the filing of the petition,
Deal has been moved to the Hutchinson Correctional Facility, where Sam Cline is the warden.

1

few days later, Phalp's body surfaced along the shore of Hillsdale Lake in Miami County, Kansas. Her body had a heavy tow chain wrapped around her ankles. Evidence at trial established the chain belonged to Deal.

The coroner determined that Phalp died from asphyxia, a general term for a lack of oxygen to the brain. The coroner was unable to determine what caused the asphyxia, and indicated that Phalp could have died from drowning, suffocation, smothering, or choking.

During the investigation, officers discovered that in late July, 1998, there was an altercation between J.R. Waters and Phalp. According to the testimony of Phalp's father at trial, Phalp told her father that J.R. Waters had beaten her and held a knife to her throat. Phalp told her father that Deal was present when this occurred, and commented, "Don't do that, that's too messy. Just snap her neck and toss her in the back of my truck. It's much cleaner that way." Testimony from a friend of Phalp's contradicted that testimony, stating that Deal said that Phalp was the one who pulled the knife. Deal also contradicted that testimony, telling officers in an interview that Phalp became upset with Waters, she pulled out a knife and tried to stab Waters. Deal stated Phalp was injured when Waters grabbed and pushed her trying to deflect the knife away from him.

The police interviewed Deal on August 6, 1998, the day after Phalp's body was found. Deal denied seeing Phalp recently and denied any knowledge of her disappearance. A videotape of the interview was shown to the jury, and the jury was allowed to take the videotape and viewing equipment to a jury room during deliberations. Deal told police he was in Independence, Missouri, with Shaun Garrett, visiting Jesse Cook. He stated he returned home on August 3, after Phalp had disappeared. He denied being at Hillsdale Lake and denied any

knowledge of Phalp's death.

Carrie Brown testified that on the night of Phalp's disappearance, Deal and Garrett had shown up at her house around eleven at night looking for Phalp.

Jason Cook was interviewed by the police and stated that Deal had come to visit him on August 5, and Deal told Cook that "he was around when someone got seriously hurt." Law enforcement then equipped Cook with a body pack transmitter, and the conversation between Cook and Deal was played at trial. Cook asked Deal, "So you and Shaun seriously did kill her?" Deal replied, "Seriously, I'm not gonna answer that." Cook says, "I didn't think you'd ever be able to do something like that." Deal responded, "It's pretty evident you thought wrong." Later in the conversation, Cook asks, "Why'd you pull fucked up shit man?" Deal responds, "I can't tell you Jason." Cook states, "Alright, but you do know you pulled some major fucked up shit." Deal replies, "Well, I had it planned so perfectly. So perfectly. I had it planned so perfectly, Jason. I shouldn't have put it on Jesse."

Deal met with officers again on August 14, 1998. Officers obtained consent to search his truck and found a chain hook behind the passenger seat of Deal's truck. Deal approached one of the officers, and admitted that he lied about where he was on the night Phalp was killed. He then told the police he was in the park smoking marijuana. Deal was arrested for Phalp's murder approximately 17 days later.

On January 11, 1999, less than one month before Deal's trial began, Deal met with KBI Agent George Johnston. Deal told Agent Johnston the following: On August 2, 1998, he and Shaun Garrett decided to go to Hillsdale Lake to use Garrett's parents' boat. They picked up a chain, a 30 pack of beer, and left for the lake in Garrett's car. They saw Phalp walking along

87th Street in Lenexa.  They picked her up and the three of them went to the lake.  At the lake,

they discovered they had the wrong keys for the boat storage garage.  The three of them went to

the lake to smoke marijuana and drink beer.  Deal got mad at Phalp while they were at the lake

because she was harassing him, and he kicked her in the stomach.  Garrett told Deal that he

wanted some private time with Phalp, so the two of them left.  Garrett came back about 45

minutes later, and said, "We have a problem, Aubrey's dead."  Phalp was sitting in the front

passenger's seat slumped over.  Deal picked up her arm with his foot, raised it up, and let it fall.

Deal believed that Phalp was either dead or extremely unconscious.  Garrett told Deal to help

him get rid of her and threatened to harm Deal and his family if he did not help.  They put the

chain around Phalp's neck and pulled her to the pier.  They then wrapped the chain around her

legs.  They put her up on the cement railings and dropped her over the side into the water.  Deal

state that he told Jesse Cook that he had killed Phalp in the hopes that Cook would be an alibi for

Garrett and him.

    At trial, Jason Cook testified that Deal told him that he had killed a girl by strangling her

and had dumped her body in Hillsdale Lake.  Cook said that Deal stated he wrapped the chains

around the victim's ankles to hold her down.  Deal asked Cook to be his alibi.

    Jesse Cook testified that Deal told him that he needed an alibi because he had strangled a

girl and dumped her body in Hillsdale Lake.  Jesse Cook stated that Deal said he did it because

"she was a stupid bitch."

    Ron Hunke testified at trial that he worked with Garrett and that on Monday, August 2,

1998, Garrett told Hunke, "We don't have to worry about that dumb bitch anymore."

## II.  Procedural History

Deal was convicted by a jury of first degree premeditated murder.  The defendant filed a direct appeal.  His conviction was affirmed by the Kansas Supreme Court.  State v. Deal, 271 Kan. 483, 23 P.3d 840 (2001).  Deal then filed for habeas relief pursuant to K.S.A. 60-1507.  The trial court denied relief, and Deal appealed.  The Kansas Court of Appeals affirmed the trial court.  Deal v. State, 110 P.3d 1053 (2005).  Deal then filed a motion to correct sentence pursuant to K.S.A. 22-3504.  The trial court denied the motion, and the Kansas Supreme Court affirmed.  State v. Deal, 286 Kan. 528, 186 P.3d 735 (2008).  While Deal's motion to correct sentence was still pending in the Kansas courts, Deal filed a motion for habeas corpus relief pursuant to 28 U.S.C. § 2254 in the United States District Court for the District of Kansas.  The District Court dismissed the case, ruling that the petition was not timely filed.  Deal v. McKune, 2006 WL 3497765 (D.Kan. Dec. 4, 2006).  Deal filed a motion for reconsideration, motion for review, and a request for a certificate of appealability with the District Court.  The motions were denied.  Deal v. McKune, 2007 WL 293893 (D.Kan. Jan. 26, 2007).  The Tenth Circuit determined that the Kansas Supreme Court allowed Deal to docket out of time his appeal from the denial of his K.S.A. § 22-3504 motion, and since the appeal was currently pending in state court, the statute of limitations was not expired.  Deal v. McKune, 244 Fed.Appx. 185 (10th Cir. 2007).  The Tenth Circuit reversed the District Court, and remanded for consideration of whether to stay or dismiss without prejudice.  Id. at 187.  The District Court dismissed the case without prejudice.  Deal v. McKune, 2007 WL 4180392 (D.Kan. Nov. 21, 2007).  Deal timely filed this motion.

III.  <u>Jurisdiction</u>

The court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 2254 and 28 U.S.C. § 1331.

IV.  Standard of Review

In reviewing a petition pursuant to 28 U.S.C. 2254, the federal court must decide if the petitioner is in custody in violation of the constitution or laws of the United States.  Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).   The provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) govern this appeal.  Martinez v. Zavaras, 330 F.3d 1259, 1262 (10th Cir. 2003).  The "AEDPA circumscribes a federal habeas court's review of a state-court decision."  Lockyer v. Andrade, 538 U.S. 63, 70, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).  When the state court has adjudicated a claim on the merits, the Court may not grant a writ of habeas corpus unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established Federal law means, "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Lockyer at 71-72.  Determining what the Supreme Court has clearly established is usually "straightforward."  Id.  First, a state court's decision is contrary to such law "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts."  Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct.

1843, 152 L. Ed.2d 914, 926 (2002). Second, the state court's application of clearly established Federal law is unreasonable "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." Id. The application must be unreasonable, not just incorrect. Id. "Avoiding these pitfalls does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state court decision contradicts them." Patton v. Mullin, 425 F.3d 788, 794 (10th Cir. 2005), citing Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L. Ed. 2d 263 (2002). In addition, we presume the state court's factual determinations are correct and the petitioner bears the burden to rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court does not stand to correct errors of state law and is bound by a state court's interpretation of its own law. Estelle, 502 U.S. at 67-68.

V. Exhaustion

A state prisoner generally must exhaust all available state court remedies before seeking a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). The exhaustion requirement is satisfied when a federal claim has been "fairly presented to the state courts" such that the State had an opportunity to correct the violations of the prisoner's federal rights. Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). The petitioner must invoke a complete round of the state's appellant review process. O'Sullivan at 845. To satisfy the exhaustion requirements, the state court must be "alerted to the fact that the prisoner is asserting claims under the United States Constitution." Duncan v. Henry, 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). The petitioner must present the substance of the federal claim, however, he need not cite

book and verse on the federal claim.  Picard v. Connor, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

"Principles of exhaustion are premised upon recognition by Congress and the Court that state judiciaries have the duty and competence to vindicate rights secured by the Constitution in state criminal proceedings.  Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." Williams v. Taylor, 529 U.S. 420, 436-37, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000).  When the state court decides an issue on the merits, federal habeas review is not precluded.  Hooks v. Ward, 184 F.3d 1206, 1215 (10th Cir. 1999).  Petitioner must only present the "essential substance" of his claim to the state court.  Hawkins v. Mullin, 291 F.3d 658, 664 (10th Cir. 2002), citing Engberg v. Wyoming, 265 F.3d 1109, 1116 (10th Cir. 2001), *cert. denied*, 535 U.S. 1001, 122 S.Ct. 1570, 152 L.Ed.2d 490 (2002).  If the petitioner fails to exhaust state court remedies, and now the claims would be procedurally barred in state court, they are procedurally barred in federal habeas review.  Coleman v. Thompson, 501 U.S.722, 735, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Exhaustion will be addressed on each claim individually.

VI.  Discussion

    a.  Polygraph Examination

Deal argues he was unconstitutionally prejudiced in violation of the Fifth and Fourteenth Amendments when the trial court denied his request for a mistrial after the State played a videotape for the jury in which it showed Deal refusing a polygraph examination.

Deal raised this issue on direct appeal.  Deal argued that the trial court erred in refusing to grant a mistrial after the State introduced videotaped testimony showing Deal's refusal to take

a lie detector test. The Kansas Supreme Court determined that Deal failed to show substantial prejudice by the isolated reference to the polygraph examination. The Court found that although the mention of the polygraph was inappropriate, the isolated incident did not prejudice Deal or require a new trial. The State argues that state evidentiary rulings is not a basis for federal review. The State also argues that since Deal did not raise the issue on direct appeal as a constitutional issue, but rather as a an erroneous evidentiary ruling, the defendant has not exhausted the claim, and it is procedurally defaulted.

"It is not the province of a federal court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68. A state court's evidentiary ruling is subject to federal habeas review only if it violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. Coleman v. Mitchell, 244 F.3d 533, 542 (6th Cir. 2001). "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan v. Henry, 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). A review of Deal's argument on direct review shows that he did not argue a violation of federal law. However, Deal did rely on one Kansas case that interpreted federal law, and one United States Supreme Court case. Therefore, an argument could be made

that Deal presented the question whether his conviction violated federal law or the United States Constitution.

"The admissibility and use of polygraph evidence are matters of state law and present no issues cognizable on federal habeas review." Green v. Roberts, 13 F.3d 405 (10th Cir. 1993) (unpublished table decision), citing 28 U.S.C. § 2254(a); Estelle v. McGuire, 112 S.Ct. 475, 480 (1991). However, the Court in Green found that when the petitioner raises the issue in terms of due process, and the issue was raised at the State Court level, the issue is exhausted and ripe for habeas review. Id. at 5.

Deal relies on United States v. Scheffer, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). Scheffer addressed whether Military Rule of Evidence 707, which makes polygraph evidence inadmissible in a court-martial proceeding, was unconstitutional. Scheffer attempted to have a polygraph, which indicated no deception, admitted into evidence. The trial judge denied the request, relying on Military Rule of Evidence 707, which does not allow the results or any references of a polygraph, to be admitted into evidence. The Supreme Court affirmed the trial court, finding that Rule 707 advanced the interest of barring unreliable evidence, preserving the jury's function of making credibility determinations, and avoiding litigation over issues other than guilt or innocence. Id. at 312-13, 14.

Deal's reliance on Scheffer is misplaced. The Tenth Circuit held that "Scheffer held that the per se exclusion of polygraph evidence was not a constitutional violation because of the inherent unreliability of polygraph evidence. Scheffer does not stand for the proposition that the introduction of polygraph evidence necessarily constitutes constitutional error." Thornburg v. Mullin, 422 F.3d 1113, 1125 (10th Cir. 2005).

On direct appeal, the Kansas Supreme Court addressed this issue. The Court found that Kansas law is well settled that absent stipulation by the parties, the results of a polygraph test are inadmissible in a criminal proceeding. See State v. Wise, 237 Kan. 117, 124, 697 P.2d 1295 (1985). The Court found that "mere mention of the word 'polygraph,' however, is not grounds for mistrial." State v. Deal, 271 Kan. 483, 492, (2001), citing State v. Green, 245 Kan. 398, 406, 781 P.2d 678 (1989). The Court found that Deal failed to show substantial prejudice by the isolated reference to the polygraph examination.

The Tenth Circuit has held that mere reference to a polygraph test does not require a mistrial. United States v. Blaze, 143 F.3d 585, 594 (10th Cir. 1998), citing United States v. Walton, 908 F.2d 1289, 1293 (6th Cir. 1990). The single reference that a polygraph test was offered to Deal does not require the court grant Deal's request for habeas review. It is clear that although the reference to the polygraph should not have been presented to the jury, the Kansas Supreme Court's holding is not in violation of established law. In federal habeas actions a state trial court's evidentiary rulings will not be disturbed unless they render the trial so fundamentally unfair that a petitioner's constitutional rights are denied, and no such denial is evident in this case.

Deal has not shown that his state evidentiary issue raises a federal constitutional claim. Deal has not cited to one case in which a court determined that an isolated reference to a polygraph examination violated the defendant's due process rights. Deal's request for relief on this claim is denied.

b. Videotape of Garrett's interview

Deal argues that his trial was unconstitutionally prejudiced in violation of the Fifth and

Fourteenth Amendment.  Deal argues that the trial court erred in denying his request to play the videotape of Garrett's interview with the police.  During the trial, Garrett was subpoenaed by Deal, however, he asserted his Fifth Amendment right to remain silent.  Deal then attempted to play the videotape of his interview.  The State objected on hearsay grounds.  The trial court sustained the objection, and the jury was not allowed to view the videotape.

On direct appeal, the Kansas Supreme Court found that since Deal failed to make a proffer of excluded evidence, he was precluded from obtaining appellate review pursuant to K.S.A. § 60-405.  The Supreme Court reviewed the record, and found there was no proffer regarding the substance of the videotape interview, therefore, there was no basis for the Court to consider if the evidence was properly excluded.

Deal also raised the issue in his state habeas case, arguing his counsel was ineffective in failing to make an adequate proffer of the videotape at trial.  The trial court rejected his argument, finding that the trial court accepted the videotape as part of the record, and watched the videotape during a trial recess, although this information did not come to light during Deal's direct appeal.  Reviewing the trial court's finding, the Court of Appeals ruled that no proffer was necessary, as the trial court had a copy of the tape, and had watched the tape.  Therefore, there was nothing more his counsel could have done to preserve the issue on appeal.  For the first time on appeal to the Kansas Court of Appeals, Deal argued that the videotape would have been admissible as an act and declaration of an accomplice or co-conspirator that was made to preserve concealment of a crime.  The Court did not address the merits of his new arguments directly, but found that the admission and showing of the videotape would not have a reasonable probability of changing the outcome of the trial.  The Court relied on the fact that Garrett made

no admission that he had murdered Phalp or that he had any contact with her on the day of her disappearance. The Court found counsel was not ineffective under the Strickland standards.

In his federal habeas petition, Deal argues that the merits of his argument should be addressed on federal habeas review, and requests the court review the tape under the standard of review which the Supreme Court would have applied on direct appeal had the trial court not kept the viewing of the tape a secret until post-conviction litigation. When a claim or argument is not addressed by the state court, AEDPA deference is not warranted because it is not adjudicated on the merits. Le v. Mullin, 311 F.3d 1002, 1010-11 n. 2 (10th Cir. 2002). Therefore, this court must address the merits of the claim de novo. Id.

Deal argued on direct appeal to the Kansas Supreme Court that his Fourteenth Amendment Due Process right to present his theory of defense was violated when the trial court did not allow him to play the video tape for the jury. Deal argued that the error was a question of federal constitutional error. Although the Court did not address the merits of his claim, it is clear that the State court had a full and fair opportunity to address the claim. The claim is exhausted.

Deal attempted to admit Garrett's videotape interview at trial, arguing that the videotape should be admitted to show Garrett's state of mind and his thought process. The state objected, arguing, "It's clear that this is hearsay. This is a statement of a party who is not present and will not be present or available to testify. There's no hearsay exception I can find or Mr. Moriarty has indicated that exists that would allow the playing of this videotape under these circumstances. The State objects to the playing of any portion of that videotape." The trial court sustained the objection.

On direct appeal, Deal argued that the videotape was not offered to prove the truth of

Garrett's statements, but to show Garrett's guilty knowledge and the fact that he was present when she died.  Deal argues the videotape would have also shown Garrett giving a false alibi (although it was the same alibi given by Deal) for the time period which the victim was killed. Deal argues this evidence would have directly supported Deal's defense, that Garrett killed the victim.

Deal now argues that the tape was not offered for the truth of what Garrett said, but to show the falsity of the matter asserted.  Therefore, the contents of the tape do not constitute hearsay.  Deal argues that exculpatory statements that are proven to be false constitute circumstantial evidence of guilt, and are admissible.  Further, Deal argues that if the court finds the contents are hearsay, the tape qualifies as an exception pursuant to K.S.A. § 60-460(j), as it is a statement uttered by a declarant under circumstances where their content exposes the declarant to significant criminal penalties, and therefore are reliable enough not to fall within the prohibition of the hearsay rule.  Deal also argues that Garrett's statements constitute statements of a co-conspirator under K.S.A. 60-460(i)(2).  Finally, Deal argues he has a constitutional right to present a defense.

Federal courts are prohibited from granting writs of habeas corpus when the petitioner has not exhausted the remedies available in the state courts.  28 U.S.C. § 2254(b)(1)(B)(I). Therefore, Deal's new arguments that the tape qualifies as an exception pursuant to K.S.A. § 60-460(j) or K.S.A. § 60-460(i)(2) will not be considered.  Only the argument raised on direct appeal will be addressed.

The state of mind exception to the hearsay rule, otherwise known as the "statements of physical or mental condition of declarant," is a statement of the declarant's  "then existing

statement of mind, emotion or physical sensation." K.S.A. 60-460(l)(1). The state of mind exception is admissible "when such a mental or physical condition is in issue or is relevant to prove or explain acts or conduct of the declarant." K.S.A. 60-460(l)(1). The state of mind exception to hearsay is a firmly rooted hearsay exception, and the trial court does not need to determine whether the statements contain particular guarantees of trustworthiness. State v. McKinney, 272 Kan. 331, 344, 33 P.3d 234 (2001), overruled on other grounds, State v. Davis, 283 Kan. 569, 158 P.3d 317 (2006).

The admissibility of evidence lies within the sound discretion of the trial court. State v. Lumley, 266 Kan. 939, 950, 976 P.2d 486 (1999). When the exclusion of admissible evidence is error, the court must determine if the trial error is harmless error or prejudicial error. State v. Lumley, 266 Kan. 939, 951, 976 P.2d 486 (1999). In State v. Getz, 250 Kan. 560, 830 P.2d 5 (1992), the Court found that error is not harmless if the excluded evidence could have resulted in a different result by the jury. Id. at 570. "A relevant factor in determining whether an erroneous admission of evidence is harmless error is the weight of evidence supporting the conviction." State v. Bradford, 219 Kan. 336, 338, 548 P.2d 812 (1976).

A review of the transcript of Garrett's interview with police shows the following: Garrett was interviewed by police on August 6, 1998. Garrett told the police the same story that Deal initially told police, that on Sunday, August 3, 1998, he and Deal went to Independence, Missouri to hang out with Jesse Cook. They did not return from Independence until the early morning hours of Monday, August 3, 1998. Garrett stated the last time he saw Phalp was Saturday evening. After being informed that Phalp's body had been found, officers asked him where her body was found. Garrett responded that it was found by the lake, although it is

unclear if and how he knew that information prior to the interview.

Even if the trial court was in error in refusing to admit the videotape of Garrett's interview, the error was harmless. Deal argues that Garrett's interview would have shown his state of mind, and guilty conscience. His interview may show that he lied to officers, but it also shows that he gave the same statement and alibi to officers that Deal initially gave. In the interview, Garrett does not confess to killing Phalp, and although he makes statements that may implicate himself in his knowledge of Phalp's death, this information does not change the testimony or the evidence against Deal. Deal focuses on the fact that the jury did not hear the lies that Garrett told to the police, but fails to recognize that the jury did hear that Garrett told someone before Phalp's body was found, that "We don't have to worry about that dumb bitch anymore." The jury heard Deal's initial alibi, and also heard Deal's second explanation of events. Garrett's interview does not effect the evidence presented against Deal, and a review of the record shows there was significant evidence to support the conviction of Deal.

A federal court may only issue a writ of habeas corpus on the basis of a state court evidentiary ruling when the ruling violated the defendant's right to due process by denying him a fundamentally fair trial. Romano v. Gibson, 239 F.3d 1156, 1166 (10th Cir. 2001). The Supreme Court has also recognized that a defendant has the right to present witnesses in his or her own defense. Washington v. Texas, 388 U.S. 14, 18-19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). This is a fundamental element of due process. Id. at 19. The court should consider the materiality of the excluded evidence to determine if the defendant has been deprived of a fundamentally fair trial. Maes v. Thomas, 46 F.3d 979, 987 (10th Cir. 1995). The court can consider if the prejudice from the excluded evidence compares to the properly admitted evidence

of guilt.  United States v. Magleby, 241 F.3d 1306, 1317 (10th Cir. 2001).

In Primeaux v. Workman, 2010 WL 3942395 (W.D.Okla., October 7, 2010), the court addressed a similar issue on federal habeas review.  Primeaux was charged, along with his co-defendant Davis, with the murder of two individuals.  Prior to trial, the court found that Davis was incompetent to stand trial.  Primeaux attempted to admit Davis' statements made to police, and the trial court denied the request, finding the statements untrustworthy for a number of different reasons.  The Oklahoma Court of Appeals affirmed the trial court's exclusion of Davis' statements relying on the Supreme Court's decision in Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).  Id. at 9.

In Chambers, the Court held that exclusion of evidence which bears "persuasive assurances of trustworthiness" may not be excluded based on an application of the rules of evidence when that evidence is critical to a defendant's case.  Id. at 302.  Testimony that contains the assurances of trustworthiness and qualifies as an exception may not be excluded by the hearsay rule to "defeat the ends of justice."  Id.  The evidence that was excluded was critical to Chamber's defense, and therefore, exclusion of the evidence denied Chambers a fair trial.  Id.

Relying on Chambers, the District Court recognized the State's interest in excluding unreliable evidence.  Primeaux at 9.  Although the statements were relevant to establish that Davis was present at the scene and had knowledge of the crime, there was no other evidence that corroborated his statements.  Id.  Primeaux argued that the statements were trustworthy enough for Davis to be bound over for trial.  The Court found that although that was true, petitioner had not demonstrated that the State's actions entitled him to relief under clearly established federal law.  Id. at 10.  Finally, the court found that the admission of Davis' statements would not

necessarily create reasonable doubt.  Id.

The Tenth Circuit set forth a two part test to determine whether the trial courts exclusion of evidence violated the defendant's right to present witness testimony.  Richmond v. Embry, 122 F.3d 866 (10th Cir. 1997).  First, whether the testimony was relevant, and if the state's interest in excluding the evidence outweighed the defendant's interest in the admission.  Second, was the excluded testimony material, of such an exculpatory nature that its exclusion affected the trial's outcome.  Id. at 872.

Deal has not shown that Garrett's statement to police is reliable.  In fact, Deal argues that the statement is full of lies and tried to admit it to show the falsity of the statements.  Under the test set out in Richmond, the statements made by Garrett were relevant to Deal's defense.  The State's interest in exclusion of unreliable hearsay must be weighed against  the defendant's interest in presenting his defense.  Even if the court gives more weight to the defendant's interest in presenting his defense, Deal has not shown materiality.  Deal has not shown that the inclusion of the evidence would alter the outcome of the case.  This case is similar to the Primeaux case, the statements made by Garrett may have been relevant to Deal's defense, however, there is no other evidence to corroborate his statements, and there is no evidence that Garrett's statements would have created reasonable doubt.

Deal argues that the videotape evidence would have lent credibility to his defense, yet Deal's defense was presented to the jury by the KBI Agent.  Armed with this information, the jury still convicted him of premeditated murder.  Deal has not shown that Garrett's statements to police would have resulted in a verdict different from the one returned.  Deal's request for relief on this claim is denied.

c. Photograph

Deal argues that he was unconstitutionally prejudiced in violation of the Fifth and Fourteenth Amendments to the United States Constitution when the trial court allowed the introduction of an overwhelmingly prejudicial and irrelevant gruesome photograph.  On direct appeal, Deal argued that the photograph was prejudicial and deprived him of his right to a fair trial.  The Kansas Supreme Court found that the "photograph did assist Dr. Donald P. Pojman, a forensic pathologist, in explaining the attempt to determine the cause of death."  Deal, 271 Kan. at 493.  The Court ruled there was no abuse of discretion in the admission of the photograph. Deal did not raise a constitutional argument on direct appeal regarding the photograph.  Deal only argued that the admission was an error of the trial court evidentiary ruling.  Therefore, the claim is not exhausted, and the claim is barred on federal habeas review.

Even if this claim was exhausted, and federal habeas review was available, habeas relief would not be available to Deal.  Deal argues in his federal habeas motion that the admission of the photograph prejudiced him to such an extent that his trial was fundamentally unfair.   Federal habeas review is not available to correct state law evidentiary errors, instead, it is limited to violations of constitutional rights.  Smallwood v. Gibson, 191 F.3d 1257, 1275 (10th Cir. 1999). Due process arguments relating to the admissibility of photos will not support habeas relief "absent fundamental unfairness so as to constitute a denial of due process law.  Martin v. Kaiser, 907 F.2d 931, 934 (10th Cir. 1990), cert. denied, 525 U.S. 950, 119 S.Ct. 378, 142 L.Ed.2d 312 (1998).

Although the photograph was graphic as it depicted a body that had been in water for a period of time, the Kansas Court of appeals found that the photograph assisted the pathologist, as

he testified that "the reason for the accelerated decomposing in the head and face was that there was congestion in the head and additional blood pooling inside the head as opposed to the rest of the body. One of the causes of the congestion would be strangulation, a closing off of the flow of blood from the head while the arteries allow blood to enter the head." Given the probative nature of the photograph, and the use of the photograph by the pathologist, the Kansas Supreme Court's rejection of the claim was not unreasonable. The admission of the photograph was not so unduly prejudicial as to render the proceedings fundamentally unfair. Deal's request for relief on this claim is denied.

d. Instruction on "Aiding a Felon"

Deal argued on direct appeal that the trial court committed reversible error when it failed to instruct on aiding a felon, and his rights were violated under the Fourteenth Amendment. Deal argued that a defendant in a criminal prosecution is entitled to an instruction on his theory of defense. The Kansas Supreme Court found that the trial court was not in error in refusing to give an instruction on aiding a felon when Deal was not charged with the crime. Deal has not exhausted this claim, as he did not present this issue to the state court for a determination of federal constitutional rights. However, even if this claim was not procedurally barred, Deal's argument would fail.

In his federal habeas case, Deal argues that failure to give the jury the instruction on aiding a felon was a violation of his rights under the Fifth and Fourteenth Amendments. Deal argues that the Kansas courts ignored well established federal law, and he was entitled to a jury instruction which supported his defense.

The Supreme Court has never recognized a federal constitutional right to a lesser

included offense instruction in non-capital cases.  Beck v. Alabama, 447 U.S. 625, 638 n. 14, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).  The Tenth Circuit has established a rule of "automatic non-reviewability" for claims based on a state court's failure to give a lesser included offense instruction in a non-capital case.  Chavez v. Kerby, 848 F.2d 1101, 1103 (10th Cir. 1988).  Petitioner cannot raise a debatable claim he is entitled to habeas relief on this ground.

e. Videotape of Deal's interview

Deal argues that his Fourth, Fifth, and Fourteenth Amendment rights were violated when the trial court allowed his videotape statement into evidence, as Deal had not been provided with any Miranda warnings.  Deal raised this argument on direct appeal.  Deal argued to the Kansas Supreme Court that his Fifth Amendment Right against self-incrimination was violated as he did not receive Miranda warnings prior to the interview.

The Kansas Supreme Court relied upon the standard set forth in State v. Jacques, 270 Kan. 173, 14 P.3d 409 (2000).  In Jacques, the court reviewed eight factors to determine if a person who is interrogated is in custody.  The factors are: (1) when and where the interrogation occurred; (2) how long it lasted; (3) how many police officers were present; (4) what the officers and the defendant said and did; (5) the presence of actual physical restraint on the defendant or things equivalent to actual restraint such as drawn weapons or a guard stationed at the door; (6) whether the defendant is being questions as a suspect or as a witness; (7) how the defendant got to the place of questioning, that is, whether he came completely on his own in response to a police request or was escorted by police officers; and (8) what happened after the interrogation - whether the defendant left freely, was detained, or was arrested.  Id. at 186.  The Kansas Supreme Court applied Kansas law in making a determination that Deal was not in custody, and

that "a reasonable person in Deal's position would have understood the situation to be a mere investigatory interrogation and not a custodial interrogation. Miranda warnings were not required. The trial court did not err in admitting Deal's videotape interview." <u>Deal</u>, 271 Kan. at 499.

On Federal review, Deal argues the Kansas Supreme Court review was not in compliance with federal law, and was an unreasonable application of federal law. Deal argues that he was not at the station voluntarily, he was not free to go, and he was subject to a custodial interview, not an investigative interrogation, therefore, Miranda warnings were required.

Miranda is applicable when the suspect is in custody and the questioning rises to the level of interrogation. <u>United States v. Perdue</u>, 8 F.3d 1455, 1463 (10th Cir. 1993). The relevant inquiry with regard to custody is how a reasonable person in the suspects position would have understood his situation. <u>Berkemer v. McCarty</u>, 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). A person is in custody when his "freedom of action is curtailed to a degree associated with formal arrest." <u>Perdue</u>, 8 F.3d at 1463. The Tenth Circuit, interpreting a number of Supreme Court cases, has set forth a number of factors to determine if a person is in custody, such as the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview, whether the police informed the suspect that he is free to leave, the nature and length of the officers' questions, and the atmosphere where the interview took place. <u>United States v. Griffin</u>, 7 F.3d 1512, 1518-19 (10th Cir. 1993).

A review of the record shows that Deal was not in custody when he was interviewed. Deal arrived at the police station in his own vehicle, and was free to leave at any time. He was never placed under arrest or in handcuffs. When Deal asked to leave, he was allowed to leave.

On two different occasions while he was in the interview room, Deal's phone rang, and he answered the call, without objection from the officer conducting the interview. Reasonable jurists could not debate whether the district court should have resolved this claim in a different manner because the Kansas Supreme Court's determination was not contrary to, and was not an unreasonable application of, clearly established federal law.

      f.  <u>Testimony of victim's father - hearsay</u>

Deal argues that the State should not have been allowed to introduce the testimony of Phalp's father, as it was inadmissible hearsay and admitted in violation of his Fifth, Sixth and Fourteenth Amendment rights. Deal raised this issue on direct appeal, arguing that Phalp's father's statement was inadmissible hearsay, and it violated the Confrontation Clause. The Kansas Supreme Court addressed the issue on the merits, applying <u>Ohio v. Roberts</u>, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The Court found that the testimony of Phalp's father was firmly rooted in a hearsay exception, the statements were properly admitted, and the court did not abuse its discretion. <u>State of Kansas v. Deal</u>, 271 Kan. 483, 499, 23 P.3d 840 (2001).

In his federal habeas review, Deal argues that Phalp's father's statements constituted double-hearsay, the excited utterance exception did not apply, and the trial court violated the Confrontation Clause in admitting the evidence. Deal argues that the Supreme Court's decision in <u>Crawford v. Washington</u>, 124 S.Ct. 1354, 5412 U.S. 36, 158 L.Ed.2d 177 (2004) and <u>Davis v. Washington</u>, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), requires the court to grant Deal a new trial in which the State is precluded from presenting the statements of Phalp's father.

Deal also submitted a supplement to his petition, the Kansas Supreme Court opinion of <u>State of Kansas v. Davis</u>, 283 Kan. 569, 158 P.3d 317 (2006). In <u>Davis</u>, the Court reviewed the

United States Supreme Court's decisions in <u>Crawford</u> and <u>Davis</u> and found that they substantially alter the analysis of statements under the Confrontation Clause in this court's previous decisions, including <u>State v. Deal</u>, 271 Kan. 483 (2001). <u>Id.</u> at 575. The Court stated that "to the extent that the analysis in previous decisions of this court differs from the Confrontation Clause analysis set forth in this opinion, these previous decisions are overruled." <u>Id.</u>

The Kansas Supreme Court issued the direct appeal opinion on June 1, 2001. At that time, <u>Roberts</u> was applicable law. <u>Roberts</u> ruled that an unavailable witness's out of court statement may be admitted so long as it has adequate indicia of reliability, if it falls within a firmly rooted hearsay exception or bears a particularized guarantees of trustworthiness. <u>Roberts</u>, 448 U.S. at 66. The Kansas Court found that the statement by Phalp's father was reliable under the excited utterance exception. Therefore, the decision by the Kansas Supreme Court was not an unreasonable application of federal law at the time the opinion was issued.

On Federal habeas review, Deal requests the court apply <u>Crawford</u> and <u>Davis</u> retroactively to a case on collateral appeal. However, the Supreme Court has ruled that <u>Crawford</u> did not qualify as a watershed rule, and therefore was not retroactively applicable. <u>Whorton v. Bockting</u>, 549 U.S. 406, 418-421, 127 S.Ct. 1173,167 L.Ed.2d 1 (2007). Therefore, Deal's argument that this court now apply <u>Crawford</u> and <u>Davis</u> to trial rulings made in 1999 fails.

The decision of the Kansas court was not an unreasonable application of federal law at the time of the decision. Deal's claim for relief on this issue is denied.

g. <u>Testimony of victim's father - other bad acts</u>

Deal argues that the trial court erred in admitting statements from Phalp's father regarding his prior bad acts, in violation of the Fifth and Fourteenth Amendment. In Mr. Phalp's testimony, he stated that his daughter had told him that a friend of Deal's held a knife to her neck when she refused to give him money, and Deal stated, "Don't do that, that's too messy. Just snap her neck and toss her in the back of my truck. It's much cleaner that way." Mr. Phalp also testified that Deal, Garrett, and this friend had taken his daughter out to a cemetery and threatened her if she followed through with charges.

Deal raised this issue on direct appeal, arguing the trial court erred in admitting the evidence. The Kansas Supreme Court found that evidence was admissible as a discordant relationship and the trial court did not abuse its discretion. Deal, 271 Kan. at 502-03.

Deal did not raise a constitutional issue on direct appeal, therefore this issue is not exhausted and is procedurally defaulted. However, even if the issue was ripe for review, Deal would be denied relief. A petitioner seeking relief for allegedly improper admission of evidence must show "the alleged error was 'so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.'" Bullock v. Carver, 297 F.3d 1036, 1055 (10th Cir. 2002), citing Revilla v. Gibson, 283 F.3d 1203, 1212 (10th Cir. 2002). Since the court can only grant relief for a violation of federal law, Deal must show that the admission of the evidence violated his federal constitutional rights. Id. Deal has not shown that the evidence of the prior bad acts rendered the trial fundamentally unfair. The decision of the Kansas Supreme Court found no error in the admission of Mr. Phalp's statements. Deal's request for relief on this issue is denied.

h. Charging document

Deal argues that his Fifth and Fourteenth Amendment rights were violated by errors in the charging document. Specifically, Deal argues that the State charged him with first degree murder by suffocation, drowning and / or strangulation. Deal argues the medical examiner did not present evidence of Phalp's specific cause of death, only that she died of asphyxiation, caused most likely by suffocation, drowning, or strangulation. Deal also argues that the jury instruction for premeditated murder did not include the language that Phalp died of suffocation, drowning, or strangulation.

Deal did not raise this issue on direct appeal or in state habeas review. However, Deal raised the argument in a motion to correct an illegal sentence. The Kansas Supreme Court found that "a motion to correct an illegal sentence was not an appropriate vehicle by which to bring a claim that the complaint was defective." State of Kansas v. Deal, 286 Kan. 528, 530, 186 P.3d 735 (2008), citing State v. Hoge, 283 Kan. 219, 225-26, 150 P.3d 905 (2007). The Court found that since the motion was effectively a collateral attack on Deal's conviction, the district court did not have jurisdiction, and the issue should have been raised in a habeas motion.

This issue is barred for two reasons. First, this issue was not raised at the state court level to allow the state court an opportunity to correct the alleged violation of federal rights. Even if the court determined Deal has raised the issue and the state court had an opportunity to address the merits of the case, Deal did not raise a federal constitutional claim at the state court level. Therefore, this issue is procedurally defaulted.

Even if this claim was not procedurally defaulted, Deal would not be entitled to relief. The adequacy of a state criminal complaint presents a question of state law, not federal law. Johnson v. Gibson, 169 F.3d 1239, 1252 (10th Cir. 1999). On habeas review, the petitioner must

show that the state court error deprived him of fundamental rights.  Id.  A charging document

may violate the Sixth Amendment if it fails to provided a defendant with adequate notice of the

nature and cause of the accusation.  Hunter v. State, 916 F.2d 595, 598 (10th Cir. 1990).  The

charging document adequately notified Deal of the charges against him.  Deal has not presented

a cognizable claim for federal habeas relief.

I.  Ineffective assistance of counsel

Deal argues his counsel was ineffective and his Fifth, Sixth, and Fourteenth Amendment

rights were violated.  Specifically, Deal argues that his trial counsel failed to make an

appropriate offer of proof after the trial judge refused to admit the videotape interview of Shaun

Garrett, and counsel failed to properly advise Deal in deciding whether or not to testify.

Deal raised the first issue in his state habeas motion.  The Kansas Court of Appeals noted

that Deal's counsel "can only be declared ineffective if the videotape was improperly excluded

and that admission of the videotape would have had a reasonable probability of changing the

result of the trial."  Deal v. State of Kansas, 110 P.3d 1053, 2005 WL 1089045 at 6 (May 6,

2005).  The Court found that Deal's counsel did present the videotape to the trial judge and it

became part of the trial record.  The Court further found that even if the videotape had been

admitted, Deal had not shown that "it would have had a reasonable probability of changing the

outcome of the trial."  Id. at 7.  The Court noted that Garrett did not make any admission in the

videotape or make any statement that he had contact with the victim on the day of her

disappearance.  Id. at 7.  The Court found that it was unlikely that the videotape would have

changed the outcome of the trial.  Id.

Deal also argued that his trial counsel failed to properly advise him regarding  his right to

testify at trial in his state habeas case.  The trial court found that during the trial stage, the trial court conducted questioning of Deal, informing him of his right to testify, and accepting his waiver of his right to testify.  In the habeas evidentiary hearing, Deal testified that his counsel informed him that he did not have the option to testify at trial, although he wanted to testify. Deal's counsel testified that he advised Deal that his statement of the events of the night Phalp disappeared were told to the jury through KBI Agent Johnston.  Deal's counsel also testified that he told Deal that he would be subject to cross examination if he testified.  On appeal, the Court of Appeals found that Deal's waiver of his right to testify was knowing and voluntary, and that Deal failed to set forth how his trial testimony would have had a reasonable probability of affecting the result of the trial.  Id. at 8.  The Court denied his claims of ineffective assistance of counsel.  Id.

Deal has exhausted his claims for ineffective assistance of counsel.  The standard to set forth a claim for ineffective assistance of counsel in the Federal Courts is well established.  To establish ineffective assistance of counsel, a defendant must show his counsel's performance was deficient and that the deficient performance was prejudicial.  Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  "Judicial scrutiny of counsel's performance must be highly deferential......a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'."  Strickland at 689, citing Michel v. Louisiana, 350 U.S. 91, 76 S.Ct.158, 100 L.Ed. 83 (1955).  The defendant must also show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different.  <u>Strickland</u> at 694.

The state court's decision on Deal's ineffective assistance of counsel claims was not an unreasonable application of federal law.  Deal has not shown that his counsel's performance was deficient, or that his counsel's performance prejudiced the defense.  The Kansas Court of Appeals was not unreasonable in their determination and the Court correctly applied clearly established federal law.  Deal has failed to establish prejudice from the alleged ineffective assistance of counsel.

VII.  <u>Conclusion</u>

IT IS THEREFORE ORDERED that the petition for relief under 28 U.S.C. § 2254 (Doc. 1) is DENIED;

IT IS FURTHER ORDERED that a Certificate of Appealability under 28 U.S.C. § 2253 is DENIED.

SO ORDERED this 22nd day of November, 2010.


 s/ Wesley E. Brown
Wesley E. Brown
Senior U.S. District Judge